UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| THERESA THURMAN, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.: 16 CV 10889 |
| | ) | |
| STAVARU ACADEMY, a sole proprietorship, | ) | Hon. Charles Norgle |
| STAVARU SOCCER ACADEMY LLC, | ) | |
| CIPRIAN STAVARU, an individual, & | ) | |
| SILVIYA STAVARU, an individual, | ) | |
| | ) | |
|     Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR
<u>SUMMARY JUDGMENT</u>**

## I. Introduction.

Plaintiff, Theresa Thurman, alleges Stavaru Soccer Academy, (mistakenly sued as Stavaru Academy), Stavaru Soccer Academy, LLC, Ciprian Stavaru, and Silviya Stavaru failed to pay owed employment wages. Yet, Thurman was never an employee entitled to any wages. Moreover, Thurman *admits in her deposition that she never worked for Stavaru Soccer Academy, LLC*. Rather, Thurman was the parent of several children participating with soccer teams affiliated with Stavaru Soccer Academy. As a parent she volunteered to assist with the logistics of her child's team as a team manager, as many parents do for the teams associated with Stavaru Soccer Academy – and as millions of parents do for youth sports teams across the country. Over time, Thurman volunteered to be the team manager for extra soccer teams in addition to her child's team. This is also not uncommon in youth sports. Thurman was a volunteer team manager for Stavaru Soccer Academy for approximately two years. Thurman's own actions, inactions, and statements prove she also believes she was a volunteer. During this time period, Thurman did not complete forms, never submitted time sheets, never submitted time cards, never asked for wages, never asked to be paid wages for two years of time, did not receive wages, and did not have an employment contract of any kind. This is because Thurman was not an employee – she was a volunteer.

Even if this Court finds Thurman was not a volunteer, she should not be entitled to recovery from any Defendant. Thurman testified under oath that she was a 50% owner of Stavaru Soccer Academy. As a result, she is exempt. Thurman's failure to request a paycheck or payment of wages during the two year period at issue is consistent with being a co-owner or volunteer, and not an employee.

1

Finally, money received by Thurman from Stavaru Soccer Academy was limited to commissions for her efforts to recruit players and was based on a flat fee of $25.00 per player recruited. The work Thurman performed, as testified to by Thurman, was in furtherance of this recruitment commission. Stavaru Soccer Academy had no control over the method or means to recruit players. Thurman was not given any instruction or training on how, when, or where to recruit from Stavaru Soccer Academy. Rather, Thurman used her own methods and equipment, and Thurman dictated her own schedule of when and how much she wished to recruit players.

Thurman was not offered, and did not receive, any employment benefits such as vacation time, paid time off, health insurance, sick leave, or any other employment benefit one may typically expect from an employer-employee arrangement. Therefore, the facts demonstrate the recruitment work performed by Thurman was that of an independent contractor and not an employee. As an independent contractor, Thurman is not entitled to recovery under the Fair Labor Standards Act ("FLSA"), Illinois Wage Payment and Collection Act ("IWPCA"), or Illinois Minimum Wage Law ("IMWL").

Thurman is unable to establish a genuine issue of material fact regarding the applicability of the statutes under which she sued that would allow her to recover. Instead, Thurman's own admissions establish Defendants are entitled to judgment in their favor. This this entire lawsuit is motivated by Thurman's attempt to extort Defendants based on a completely fabricated claim of hours worked under a fictitious employment arrangement.

## II. Relevant undisputed facts and background.

Defendant Ciprian Stavaru, a talented soccer coach, organized his own soccer club called Stavaru Soccer Academy in or around 2011. Def. L.R. 56.1(a) Stmt., at ¶ 12. The Stavaru Soccer Academy provided soccer skills training to Naperville and Plainfield area children and sponsored

youth teams in the local youth soccer leagues. *Id.* at ¶ 12. During the time period at issue, Stavaru Soccer Academy was an unincorporated Illinois association with teams that were independent entities. *Id.* at ¶ 13.

Thurman's children Matthew, Ken, and Michael, Ana, and Lily trained with Stavaru Soccer Academy teams beginning on or about 2012. *Id.* at ¶ 15. As a result, Thurman volunteered to become the team manager for Matthew's team. *Id.* at ¶ 16. She volunteered until June 2015. *Id.* at ¶ 17. During the entire time period at issue, Stavaru Soccer Academy was an unincorporated association. *Id.* at ¶ 14. It was not until August 3, 2015, several months after Thurman stopped volunteering work, that Defendant filed articles of organization to become a domestic Illinois limited liability company, as Stavaru Soccer Academy, LLC. *Id.* at ¶ 3.

Team managers are most often, but not always, volunteer parents of players on the soccer teams affiliated with Stavaru Soccer Academy. *Id.* at ¶ 19. This is common for virtually all amateur youth sports. *Id.* Team managers assist the team coaches with coordinating other parents for team practices and games, including rescheduling rainouts and assisting with hotels for travel tournaments. *Id.* at ¶ 20. Team managers are often placed on the team checking accounts to facilitate quick processing of team registration fees after collection of fees from parents. *Id.* at ¶ 22. For example, it is commonplace for youth travel coaches in virtually every sport to maintain bank accounts and manage tens of thousands of dollars in players' fees for payment of team uniforms, tournament expenses, and equipment. *Id.* Thurman was provided access to the Stavaru Soccer Academy bank account in July 2014. *Id.* at ¶ 23. Other parents were placed on the Stavaru Soccer Academy checking account prior to Thurman's access. *Id.* at ¶ 24.

Over time, Thurman volunteered as team manager for her other children's teams which, again, is common for parents of players of all youth sports. *Id.* at ¶ 25. Anna began playing on a

3

Stavaru Soccer Academy team in 2013 and Lily began playing in 2014. *Id.* at ¶ 26. In addition, Thurman systematically began pushing out other volunteer parent team managers with the consent of the parents of the children on those teams and the team coaches. *Id.* at ¶ 27.

As a volunteer team manager, Thurman organized team schedules, coordinated conferences and meetings with coaches, attended league meetings, maintained liability waivers and medical information, responded to parent inquiries, maintained player cards for team members, and was involved in selecting and ordering uniforms. *Id.* at ¶ 28. The type of tasks Thurman performed were no different than what millions of parents do on a volunteer basis for youth sports teams across the country, including other team managers for Stavaru Soccer Academy. *Id.* at ¶ 29.

Thurman may have been more active than other team managers, but at no time was she an employee of any Defendant, nor did she perform work for any Defendant. *Id.* at ¶ 30. In every youth sport, the degree of time, dedication, and participation of volunteers will vary. Thurman did not hold a position or title with Stavaru Soccer Academy other than volunteer team manager. *Id.* at ¶ 31. Thurman did not receive any employment compensation or benefits from any Defendant. *Id.* at ¶ 32. Thurman never completed or submitted time sheets. *Id.* at ¶ 33. Thurman never submitted time cards. *Id.* at ¶ 34. Thurman never asked for wages while allegedly employed. *Id.* at ¶ 35. Thurman did not receive wages. *Id.* at ¶ 36. Thurman did not have an employment agreement of any kind. *Id.* at ¶ 37. No Defendant has a place of physical location for Thurman to be present. *Id.* at ¶ 38.

In addition to being a volunteer team manager, Thurman was paid a finders-fee commission for recruiting players to Stavaru Soccer Academy teams. *Id.* at ¶ 40. Because Ciprian Stavaru was aware of Thurman's financial struggles, he agreed to pay Thurman a flat commission of $25 per child that she was able to recruit to a soccer team affiliated with Stavaru Soccer Academy.

4

*Id.* at ¶ 41. Thurman failed to provide any support for the recruitment of players to teams affiliated with Stavaru Soccer Academy. *Id.* at ¶ 42. As part of her recruitment efforts, Thurman organized tryouts, engaged in marketing and brand development, and registered players into league computer software system. *Id.* at ¶ 43. Regardless of the amount of time Thurman spend recruiting, she was pad the same amount per child recruited and the more she recruited the more she made. *Id.* at ¶ 44. It was possible for Thurman to lose money for her recruitment efforts and she was free to recruit as she saw fit. *Id.* at ¶¶ 45, 54. Thurman refused payment of the recruitment commission when offered on multiple occasions. *Id.* at ¶ 46. Thurman was paid $11,000 for her recruitment of players. *Id.* at ¶ 47.

Neither Defendant provided Thurman with any equipment to do what she did as a team manager or for her recruitment activities. *Id.* at ¶ 48. Thurman used her own personal computer and car and she did not request nor receive reimbursement for any expenses. *Id.* at ¶ 49. Thurman did not complete an IRS Form W-4 but did provide Stavaru Soccer Academy a W-9. *Id.* at ¶¶ 50, 51. Despite requesting a 1099, Thurman then asked Defendants to pay her in cash and not issue the 1099. *Id.* at ¶¶ 52, 53.

### III. Argument.

Summary judgment is appropriate if the pleadings, discovery, and any affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Estate of Suskovich v. Anthem Health Plans of Va., Inc.*, 553 F.3d 559, 563 (7th Cir. 2009). A plaintiff bears the burden of establishing she is an employee and the activities in question constitute employment. *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 290 (7th Cir. 2016); *Melton v. Tippecanoe Cnty.*, 838 F.3d 814, 818 (7th Cir. 2016); *Steelman v. Hirsch*, 473 F.3d 124, 128 (4th Cir. 2007). A plaintiff cannot rest on the pleadings or mere

speculation but must affirmatively demonstrate a material issue of fact over the issue of employment to avoid entry of summary judgment. *Emanuel v. Rolling in the Dough, Inc.*, No. 10 C 2270, 2012 WL 5878385, at *2 (N.D. Ill. Nov. 21, 2012).

*Emanuel v. Rolling in the Dough, Inc.* is instructive for the facts of this case. In *Emanuel*, the court looked at the totality of the circumstances when determining whether an individual is an "employee" under the FLSA. 2012 WL 5878385. The defendant operated several Domino's Pizza franchises in the Chicago area. *Id.* at *1. The plaintiff alleged she worked at one of the locations for nearly two years. *Id.* The plaintiff further claimed that she assisted with managing the operations of the store on a daily basis. *Id.* at *2. The plaintiff, however, never completed any employment documents, such as IRS forms. *Id.* at *2. The lack of these documents, any compensation agreement, and the defendant's failure to pay the plaintiff at any time led to a determination that no employment relationship existed. *Id.* at *4. Importantly, the court rejected the argument that because the defendant was aware of the alleged employment and did not outright reject it, an employment relationship existed. *Id*. The unilateral decision of an individual to work does not create an employment relationship. *Id.* Consequently, because she was not considered an employee for purposes of the FLSA, the plaintiff was also not entitled to compensation under Illinois state employment statutes. *Id.* at *6.

Just as in *Emanuel* there is no employment relationship between Thurman and any Defendant. Despite being a team manager for two years, Thurman never had an employment agreement, did not ask for payment during the two year period, and was not compensated other than commissions for recruitment. Her post hoc unilateral claim of employment does not mean an employment relationship existed. Thurman was a volunteer team manager like several other parents. Common sense dictates that if Thurman truly believed she was an employee of Stavaru

6

Soccer Academy, she would have asked for the payment of wages each week or every two weeks, not after not being paid for nearly two years, or would have quit the alleged employment after no receiving remuneration. If she was not just a volunteer, then the facts clearly demonstrate that she was an independent contractor. In any event, Thurman is not entitled to recovery under the FLSA, IWPCA, and IMWL.

### A. Thurman's FLSA claims (Counts I and II) fail because she was a volunteer or business owner and therefore exempt.

Thurman brings two claims under the FLSA – one for overtime wages (Count I) and one for minimum wages (Count II). Both counts fail because Thurman is exempt as either a volunteer or bona fide business owner.

#### i. As a volunteer for Stavaru Soccer Academy, Thurman was not an employee and the FLSA does not apply.

Stavaru Soccer Academy was an Illinois unincorporated association and Thurman volunteered at it. As such, she is exempt from the FLSA.

While the FLSA's coverage is broad, "[t]he definition 'suffer or permit to work' was obviously not intended to stamp all persons as employees who, without any express or implied compensation agreement, might work for their own advantage on the premises of another." *Walling v. Portland Terminal Co.*, 330 U.S. 148, 152 (1947). The FLSA permits an individual who volunteers to perform services to not be classified as an employee so long he or she receives no compensation and such services and does not contemplate receipt of compensation. U.S. DEP'T OF LABOR, WAGE & HOUR DIVISION, FACT SHEET 14A, https://www.dol.gov/whd/regs/compliance/whdfs14a.pdf. The United States Department of Labor's ("DOL") Wage and Hour Division has taken an expansive view of volunteerism exempts volunteers of nonprofit organizations who donate their services as volunteers from

7

FLSA coverage. U.S. DEP'T OF LABOR, WAGE & HOUR OPINION LETTER, FLSA 2008-14 (Dec. 18, 2008). Under DOL Guidelines, parents may drive a school bus for a football team without being considered an employee. U.S. DEP'T OF LABOR, FIELD OPERATIONS HANDBOOK § 10b03(c). Moreover, a "nonprofit association" means an unincorporated organization consisting of two or more members by mutual consent for a common, nonprofit purpose. 7 C.J.S. Associations § 3 (2004).

Stavaru Soccer Academy was an incorporated organization consisting of Ciprian and Silviya Stavaru coming together for the common, nonprofit purpose of operating a youth soccer academy. According to the IRS, a sole proprietorship is an unincorporated business. INTERNAL REVENUE SERVICE, SOLE PROPRIETORSHIPS, https://www.irs.gov/businesses/small-business-self-employes/sole-propreitorships (last visited June 14, 2018). Therefore, it is a non-profit for which Thurman could volunteer without running afoul of the FLSA. Much like the parent driving the football team, Thurman volunteered as a team manager to help her children's soccer teams. Def. L.R. 56.1(a) Stmt., at ¶¶ 15–31. Again, this makes logical sense. If Thurman was an employee of Stavaru Soccer Academy, she would have asked for the payment of wages each week or every two weeks after not being paid for nearly two years, or would have quit the alleged employment after no receiving remuneration after all that time. *See id.* at ¶¶ 32 –37.

Judgment should be entered in favor of Defendants on Thurman's FLSA claims (Counts I and II) because she was volunteer at an unincorporated, nonprofit organization.

### ii. Alternatively, Thurman's FLSA claims fail because she is a business owner.

Even if Thurman is not a volunteer, the FLSA does not apply to her because she admits she is an owner of Stavaru Soccer Academy.

8

Under the FLSA, an individual is exempt (and the statute does not apply) if she has a bona fide equity interest of at least twenty percent and is actively engaged in the company's management. 29 C.F.R. § 541.101. This makes sense. The attributes of partnership, such as sharing in profits, are not consistent with employee status. *Steelman v. Hirsch*, 473 F.3d 124, 133 (4th Cir. 2007) (Gregory, J. concurring); *Wheeler v. Hurdman*, 825 F.2d 257, 277 (10th Cir. 1987). Management activities include, among others, interviewing, selecting, and training employees; setting and directing the work of employees; maintaining records for use in supervision or control; handing complaints and grievances; and purchasing equipment. 29 C.F.R. § 541.102.

Thurman admitted in sworn testimony that she was a 50% owner of Stavaru Soccer Academy. Def. L.R. 56.1(a) Stmt., at ¶ 39. Furthermore, Thurman testified she performed activities that are management activities as defined by the regulations. Specifically, she organized team schedules, coordinated conferences and meetings with coaches, attended league meetings, maintained liability waivers and medical information, responded to parent inquiries, maintained player cards for team members, was involved in selecting and ordering uniforms, organized tryouts, engaged in marketing and brand development, and registered players into league computer software system. *Id.* at ¶¶ 28, 43. Thurman, therefore, establishes she has "a bona fide equity interest of at least twenty percent and is actively engaged in the company's management." 29 C.F.R. § 541.101. She is exempt under the regulations and Thurman's FLSA claims fail. The Court should enter judgment in favor of Defendants on Counts I and II as the FLSA does not apply to Thurman.[1]

---

[1] In addition to her FLSA claims, Thurman also brings claims for common law unjust enrichment and claims under the IMWL and the IWPCA (Counts III through VI). These counts are appropriately before this court only on the basis of supplemental jurisdiction. 28 U.S.C. § 1367(a). As stated above, the FLSA does not apply because Thurman is either a volunteer or an exempt business owner engaged in

9

### B. Judgment should be entered in favor of Defendants on Thurman's claims because she was an independent contractor.

If the Court determines that Thurman was neither a volunteer nor an owner, her claims still fail because the facts demonstrate she was an independent contractor for Stavaru Soccer Academy. If an individual is an independent contractor, the protections of the FLSA, IWPCA, and IMWL do not apply. *U.S. Dep't of Labor v. Lauritzen*, 835 F.2d 1529, 1534–35 (7th Cir. 1987); 820 ILCS 115/2; *People ex rel. Dep't of Labor v. MCC Home Health Care, Inc.*, 790 N.E.2d 38, 44–45 (Ill. App. Ct. 2003). Therefore, the claims fail and judgment should be entered against Thurman and in favor of Defendants.

Whether an individual is an employee or independent contractor is a legal conclusion. *EEOC v. N. Knox Sch. Corp.*, 154 F.3d 744, 747 (7th Cir. 1998). Determining whether an individual is an employee or independent contractor requires an examination of the totality of the circumstances and an analysis of the economic reality of the working relationship. *Berger*, 843 F.3d at 290. Factors to consider include: "1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers; 4) whether the service rendered requires a special skill; 5) the degree of permanency and duration of the working relationship; 6) the extent to which the service rendered is an integral part of the alleged employer's business." *Lauritzen*, 835 F.2d at 1534–35. "No criterion is by itself, or by its

---

management activities. Without her FLSA claims, Thurman cannot support federal jurisdiction.[1] 28 U.S.C. § 1367(c)(3); *Domanus v. Locke Lord LLP*, 847 F.3d 469, 483 (7th Cir. 2017); *Gerber Plumbing Fixtures LLC v. Bryan, Pendleton, Swats & McAllister, LLC*, 152, F. Supp. 3d 1065, 1069 (N.D. Ill. 2015). Therefore, if the Court agrees with Defendants, as it should, and grants summary judgment on Thurman's FLSA claims, her remaining claims should be dismissed for lack of subject matter jurisdiction.

absence, dispositive or controlling." *Id.* at 1534. The determination of whether an individual is an employee is flexible based on the economic reality of the circumstances. *Berger*, 843 F.3d at 291.

An employer's right to control is often the most important factor when determining whether an individual is an employee or an independent contractor. *N. Knox Sch. Corp.*, 154 F.3d at 747. Individuals performing similar work to the plaintiff who receive 1099s is a strong indication that the plaintiff is an independent contractor and not an employee. *Simpkins v. DuPage Hous. Auth.*, No. 15 CV 9103, 2017 WL 3332257, at *5 (N.D. Ill. Aug 1, 2017). Freedom to complete projects in the manner of plaintiff's choosing, even if tasks are prioritized by the defendant, indicates an independent contractor relationship. *Id.* Use of personal telephones and computers to perform job tasks indicates an independent contractor status. *Id.*, at *6. Receiving a 1099 is strong evidence of an independent contractor relationship. *N. Knox Sch. Copr.*, 154 F.3d at 750; *Simpkins*, 2017 WL 3332257, at *10.

Based on the facts developed in discovery, Thurman was an independent contractor. The economic reality is that Thurman did not have an employment relationship with Stavaru Soccer Academy. While Thurman testified she was given tasks by Ciprian, she was free to perform them in any manner she saw fit. Def. L.R. 56.1(a) Stmt., at ¶ 54. There was no regularly set schedule for Thurman to volunteer her time. *Id.* at ¶ 64. Thurman volunteered her time when she deemed convenient. *Id.* at ¶ 64. She provided her own equipment to perform the work she performed and none was provided by any Defendant. *Id.* at ¶¶ 48, 49. Thurman also testified she could lose money on her alleged work efforts. *Id.* at ¶ 45. It is telling that Thurman provided a W-9 and requested a 1099. *Id.* at ¶¶ 50–53. Moreover, the individual she alleges replaced her, Nick Trotter, received a 1099 from Stavaru Soccer Academy. *Id.* at ¶ 58.

The facts overwhelmingly support a conclusion that Thurman was an independent contractor. As such, the FLSA, IWPCA, and IMWL do not apply. Judgment should be entered in favor of Defendants and against Thurman.

### C. Judgment must be entered in favor of Defendants on Thurman's IMWL claims because Stavaru Soccer Academy lacks the minimum number of employees.

Thurman brings two counts against Defendants under the IMWL – one for overtime wages (Count III) and one for minimum wages (Count IV). In addition to being inapplicable because Thurman was an independent contractor, the IMWL also does not apply because it lacks the statutorily mandated minimum number of employees.

The IMWL does not apply to an employer with fewer than four employees exclusive of an employer's spouse. 810 ILCS 105/3(d)(1). Like the FLSA, the IMWL also does not apply to independent contractors. *Jaworski v. Master Hand Contractors, Inc.*, 2013 WL 1283534, at *7 (N.D. Ill. March 27, 2013).

In this case, Stavaru Soccer Academy did not have any employees other than Ciprian Stavaru. Therefore, the IMWL is inapplicable to Thurman. Silviya Stavaru was never an employee of Stavaru Soccer Academy and even if she was it does not change the applicability of the statute as she is Ciprian's spouse. If Thurman is not an independent contractor and she is an employee, the minimum number of employees is still not triggered. The only other possible employees of Stavaru Soccer Academy are the coaches of its affiliated teams. Yet, the coaches were all independent contractors and are not included in the minimum employee count. Judgment should be entered on behalf of Defendants on Counts III and IV - Thurman's IWML claims.

> **D. Judgment must be entered in favor of Defendants on Thurman's IWPCA claim because of claim preclusion and there is no evidence of an employment agreement between the parties.**

Thurman also brings a claim for violation of the IWPCA (Count V) for failure to pay $50 per player commission for her recruitment of players to Stavaru Soccer Academy and for 50% of the profits of Stavaru Soccer Academy. This claim also fails.

Initially, there is no evidence that any Defendant ever promised to pay Thurman a $50 per player commission. Thurman admitted the agreement was for $25 per player. Def. L.R. 56.1(a) Stmt., at ¶ 41. Stavaru Soccer Academy paid Thurman $11,000 for her commissions. *Id.* at ¶ 47.

As for the allegations regarding a promise of 50% of the profits, Thurman attempted to bring a similar IWPCA claim against Defendants before the Illinois Department of Labor. Def. L.R. 56.1(a) Stmt., at ¶ 64. That complaint proceeded to a contested, evidentiary hearing. Def. *Id.* at ¶ 65. At that evidentiary hearing, Thurman admitted she never had an employment agreement with any Defendant and the Illinois Department of Labor dismissed Thurman's claims. *Id.* at ¶¶ 37, 65, 66. Thurman is, therefore, barred from relitigating the IWPCA claims under collateral estoppel. *cf. Rekhi v. Wildwood Indus., Inc.*, 61 F.3d 1313, 1320 (7th Cir. 1995) (not applying preclusive effect to IDOL decision because Illinois Administrative Procedure Act did not apply to IDOL decisions at the time).

Notwithstanding the Illinois Department of Labor's resolution of Thurman's IWPCA claim, without an employment agreement there can be no IWPCA claim. *Enger v. Chi. Carriage Cab Corp.*, 812 F.3d 565, 568–69 (7th Cir. 2016). Thurman has not identified any employment agreement with Defendants and admitted at the Illinois Department of Labor evidentiary hearing

13

that none existed. Def. L.R. 56.1(a) Stmt., at ¶ 37. Without an agreement, there is no IWPCA claim.[2]

Thurman cannot sustain her IWPCA claim because of collateral estoppel and the lack of an agreement. Judgment should be entered in favor of Defendants.

### E. Judgment should be entered on behalf of Ciprian and Silviya Stavaru because there is no evidence of willful and wanton behavior.

Ciprian and Silviya Stavaru are sued in their individual capacities for alleged willful and wanton violations of the FLSA.

Thurman has no evidence that Silviya Stavaru was an employer or ever in any position of authority over Thurman. Thurman allegedly began working for Stavaru Soccer Academy years before Silviya. Def. L.R. 56.1(a) Stmt., at ¶¶ 18, 61. Therefore, judgment should be entered against Thurman on all claims against Silviya Stavaru. Likewise, Thurman has no evidence that Ciprian Stavaru willfully failed to pay Thurman any wages. He specifically attempted to pay her for recruitment commissions but she refused. Thurman did not ask for wages for the two years that she purportedly worked as an employee and did not take actions consistent with a belief that she was. Def. L.R. 56.1(a) Stmt., at ¶¶ 30–36. It would be perverse to find Ciprian willfully violated the FLSA under these circumstances. Therefore, judgment should also be entered against Thurman on all claims against Ciprian Stavaru.

### F. Judgment should be entered in favor of Defendants on Thurman's unjust enrichment claim because it is tied to the same conduct as the failed employment claims.

Finally, Thurman brought a state law claim for unjust enrichment. The allegations supporting the claim for unjust enrichment are merely reallegations of the employment claims. Dkt. 1, at ¶¶

---

[2] Moreover, any agreement for 50% of the profits bolsters the argument that Thurman was a business owner and not an employee undercutting Thurman's FLSA claims.

14

64–67. "Unjust enrichment is a common-law theory of recovery or restitution that arises when the defendant is retaining a benefit to the plaintiff's detriment, and this retention is unjust. . . . . So, if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim—and, of course, unjust enrichment will stand or fall with the related claim." *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Because Thurman's employment claims fail, so must her unjust enrichment claim. Therefore, judgment should be entered against Thurman and in favor of Defendants.

### IV. Conclusion

Thurman has brought a fabricated, baseless, and damaging lawsuit in an effort to extort and harass the Defendants that cannot withstand her discovery admissions. Thurman wishes to convince this Court that, in spite of all of the evidence showing that Thurman was simply an involved parent active in volunteering her time to her children's youth sport (like millions of parents across the country), she somehow should be entitled to payment nearly two years after the fact. To allow Thurman to benefit from her fabricated employment arrangement and falsely claim she should now be compensated for an exorbitant amount of hours worked as a volunteer, would have a chilling effect on ability of youth sports to survive. Youth sports and amateur sport team across the country are highly dependent upon parents and individuals who are willing to volunteer their time and efforts with no expectation of payment or remuneration of any kind. If Thurman is permitted to demand payment for two years of volunteer work *ex post facto*, such a ruling could open a Pandora's Box of tens of millions of disingenuous unpaid wage claims by parents who are, in fact, managers, coaches, assistants, and "Team Moms."

For the reasons stated above, judgment should be entered against Thurman and in favor of Defendants on all of Thurman's claims.

Respectfully submitted,

Defendants Stavaru Soccer Academy, Stavaru Soccer Academy, LLC, Ciprian Stavaru, and Silviya Stavaru

By:   /s/ Joseph W. Barber

Joseph W. Barber (ARDC 6295828)
HOWARD & HOWARD ATTORNEYS
200 S. Michigan Ave. #1100
Chicago, IL 60604
(312) 456-3642
jwbarber@howardandhoward.com

## CERTIFICATE OF SERVICE

I, Joseph W. Barber, certify that on June 15, 2018, I electronically filed the foregoing Defendants' Memorandum in Support of their Motion for Summary Judgment using the ECF system, which will send notification to counsel of record in this matter.

    /s/ Joseph W. Barber