IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THERESA THURMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 1:16-cv-10889 |
| v. ) | |
| ) | Hon. Charles R. Norgle |
| STAVARU ACADEMY, et al., ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

This action is an employment dispute claiming violations of the Fair Labor Standards Act, 29 U.S.C. 201 *et seq.* ("FLSA"); Illinois Minimum Wage Law, 820 ILCS 115/1 *et seq.* ("IMWL"); Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* ("IWPCA"). Before the Court are the parties' cross-motions for summary judgment. Plaintiff's motion for summary judgment is denied in part and granted in part. Defendants motion for summary judgment is denied.

**I.  BACKGROUND**

Plaintiff Theresa Thurman ("Plaintiff") is a mother of ten children, some of whom, beginning in 2012, participated in Defendants' soccer training academy. During the relevant time, Defendant Stavaru Academy was an unincorporated entity, which trained youth soccer players in Naperville and Plainfield, Illinois; Defendant Stavaru Soccer Academy LLC provided similar youth soccer training and was created in August 2015; Defendant Ciprian Stavaru is the soccer coach who organized and created the unincorporated Stavaru Academy and Stavaru Soccer Academy LLC; Silviya Stavaru is Ciprian Stavaru's wife (referred to collectively as "Defendants" or individually).

As a threshold matter, when parties seek summary judgment they must comply with Local Rule 56.1, which requires the parties to include with their motion, "a statement of material facts as to which…party contends there is no genuine issue and that entitle the…party to a judgment as a matter of law." LR 56.1(a)(3). If the moving party fails to comply with the rule, the motion can be denied without further consideration. Id. On the other hand, if the responding party fails to comply, its additional facts may be ignored, and the properly supported facts asserted in the moving party's submission are deemed admitted. LR 56.1(b)(3)(C). Litigants must strictly comply with LR 56.1, and district courts do not abuse their discretion when they disregard facts presented in a noncompliant manner. Cracco v. Vitran Exp., Inc., 559 F.3d 625, 632 (7th Cir.2009). "The court is not required to scour the record for evidence that supports a party's case if the party fails to point it out; that is the counsel's job." Dominguez v. Quigley's Irish Pub, Inc., 790 F. Supp. 2d 803, 805 (N.D. Ill. 2011) (citing F.T.C. v. Bay Area Business Council, Inc., 423 F.3d 627, 633 (7th Cir. 2005)).

The parties' LR 56.1 submissions present many contested and unsupported facts. Because of the discrepancies between the asserted facts and the record, and for the reasons explained below, there are numerous genuine issues of material fact, preventing summary judgment for both parties—namely on the issue of whether Plaintiff was an employee. After reviewing the LR 56.1 submissions, the following facts are properly before the Court.

Plaintiff worked with Stavaru Academy and during this time she performed various tasks for the Academy's benefit. Plaintiff's tasks included: organizing tryouts, scheduling practice facilities, ordering clothing and uniforms, conducting interviews for new-hire coaches, reconciling parents' complaints, building a website, attending league meetings, and maintaining liability waivers. At no point, while Plaintiff was engaged in these tasks did she: sign an employment

agreement with Stavaru Academy; receive compensation in the form of wages; or submit time cards.

Although Plaintiff and Defendants did not sign a wage compensation agreement, there was an oral agreement between the parties in which Plaintiff would receive payment for recruiting youth players to the Academy. Ciprian Stavaru agreed to pay Plaintiff twenty-five dollars for every player she recruited into the soccer academy. In total, Plaintiff was paid $11,000 in recruitment commissions. In July 2015, Plaintiff decided to part ways with Defendants.

## II. ANALYSIS

### A. Standard of Review

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (internal quotation marks and citation omitted). "On summary judgment a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." Payne v. Pauley, 337 F.3d 767, 770 (7th Cir. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)). The court must view "the record in the light most favorable to the nonmovant and [avoid] the temptation to decide which party's version of the facts is more likely true." Id. The same standard applies to cross-motions for summary judgment. See, e.g., Int'l Bd. Of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc., 293 F.3d 402, 404 (7th Cir. 2002).

"Each motion is to be evaluated independently, and denial of one does not necessitate the grant of the other." Dominguez v. Quigley's Irish Pub, Inc., 790 F. Supp. 2d 803, 810 (N.D. Ill. 2011).

## B. Defendants' Motion for Summary Judgment

### 1. Fair Labor and Standards Act and Illinois Minimum Wage Law[1]

Plaintiff brings two claims under the FLSA, the first for overtime wages and the second for minimum wages. Plaintiff also brings a claim under the ILMW, for minimum wages. Defendants seek summary judgment on these claims. For the FLSA to apply, the onus is on Plaintiff to show either (1) Stavaru Academy is a covered enterprise, or (2) she, as an individual, was engaged in interstate commerce as an employee of Stavaru Academy (individual coverage). See 29 U.S.C. §§ 206(a), 207(a).

Defendants' arguments provide several grounds that create issues of material fact regarding whether the FLSA is applicable in this case. According to Defendants, "[Plaintiff] organized team schedules, coordinated conferences and meetings with coaches, attended league meetings, maintained liability waivers and medical information, responded to parent inquires, maintained player cards for team members, and was involved in selecting and ordering uniforms." Def.'s Mot. Summ. J. 4. Defendants, however, argue that Plaintiff's undertakings did not amount to an employment relationship. Id. at 6. Defendants also argue in the alternative that Plaintiff was an owner in the academy, which exempts her from coverage under the statute. Id. at 8; see also 29 C.F.R. 541.101 ("The term employee employed in a *bona fide* executive capacity in section 13(a)(1) of the [FLSA] also includes any employee who owns at least a bona fide 20-percent equity interest in the enterprise in which the employee is employed, regardless of whether the business is

---

[1] "[B]ecause the IMWL parallels the FLSA," courts generally use the same analysis to decide FLSA and IMWL claims. See Villareal v. El Chile, Inc., 776 F.Supp.2d 778, 784 (N.D. Ill. 2011); see also Ill. Admin. Code tit. 56, pt. 210.210 (2009) (FLSA regulations are to be used as guidance in interpreting the IMWL). For expediency, the Court refers to the two statutes collectively throughout this opinion.

a corporate or other type of organization, and who is actively engaged in its management."). Finally, Defendants argue, again in the alternative, that Plaintiff was either a volunteer or an independent contractor during the period she was involved with the academy.

Nonetheless, the record is rife with issues of material fact precluding summary judgement. See Nassis v. LaSalle Exec. Search, Inc., No. 16 C 9445, 2018 WL 2009502, at *5 (N.D. Ill. Apr. 30, 2018) (stating even though questions on the status of an employer-employee relations are matters of law, disputes over material facts may preclude summary judgment) (citations omitted). According to both parties, an agreement wherein that Plaintiff would be paid on a commissions basis by the Defendants for recruiting athletes. Def.'s LR 56.1 ¶ 119. Neither party disputes that Plaintiff received compensation. Id. The discrepancy here, which is not substantiated by the record, is the extent to which the implied agreement operated as an employment agreement. See McInerney v. Charter Golf, Inc., 176 Ill. 2d 482, 487 (1997) (stating that under Illinois law an employment agreement can be expressed or implied and is governed by contract law). Defendants cite to a Department of Labor white sheet to show the "FLSA permits an individual who volunteers to perform services to not be classified as an employee so long he or she receives no compensation [for] such services and does not contemplate receipt of compensation." Def.'s Mot. Summ. J. 7. (citation omitted). Yet, Defendants admit Plaintiff did receive compensation when she recruited players for the academy. Def.'s LR 56.1 ¶ 119.

Moreover, Defendants' argument that Plaintiff was an owner of the soccer academy raises factual questions as to whether Plaintiff did contemplate receiving compensation. For example, Plaintiff stated, "I also thought I was owner of the club too. He's like, the owner, 50/50. He said owners, he said 50/50," and "We had thousands of conversations where yes. On a daily – like every time he saw me: 50/50." Def.'s Reply LR 56.1 ¶¶ 107-08; Pl. LR 56.1, Ex. 3, Tr. 53:1-4, 9-

5

13. Plaintiff also stated, "The way I understood it was that we were 50/50 partners." Id. at ¶ 109; Pl. LR 56.1, Ex. 3, Tr. 90:10-11. Generally, partnerships are entered into with the motive of making money. 805 ILCS 206/101(f) (A partnership is defined as "an association of two or more persons to carry on as co-owners a business for *profit*.") (emphasis added). Therefore, when considering Plaintiff's statements and Defendants' argument (i.e., Plaintiff was a co-owner) it is conceivable Plaintiff contemplated getting paid at some point for her work with the soccer academy.

Even though Defendants now argue, *post hoc*, that Plaintiff was an owner during the relevant period, the record does not indicate that during this time there was "a meeting of the minds of the parties to create partnership." Maloney v. Pihera, 215 Ill. App. 3d 30, 43, 573 N.E.2d 1379, 1388 (1991). That said, without facts demonstrating Defendant Cipiran's intention, Plaintiff's belief that she was a fifty-fifty partner is insufficient to show a partnership existed. See id. ("The intention of one party cannot create a partnership.").

Next, Plaintiff argues that she was not a volunteer and should be classified as an employee. Plaintiff further argues that she was employed by Defendants as a "club administrator" and played an integral role while working for the Academy. Pl. Opp'n. Def.'s Mot. Summ. J. 2. Defendants admit Plaintiff performed various tasks for the soccer academy (as discussed above), but deny she completed them as an employee or in exchange for compensation. Def.'s Mot. Summ. J. 4. Rather, Defendants assert Plaintiff completed the same type of tasks performed by millions of volunteer parents across the country—even though at the same time, Defendants concede "[Plaintiff] may have been more active than other team managers." Id.

Under the FLSA, an "employee" is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). To "employ" is defined as to "suffer or permit to work." Id. § 203(g). Courts assess the "economic realities" when distinguishing employees from volunteers. See Okoro v.

6

Pyramid 4 Aegis, No. 11 C 267, 2012 WL 1410025, at *6 (E.D. Wis. Apr. 23, 2012) (citing Lauritzen, 835 F.2d at 1534); Skokie Maid, 2013 WL 3506149, at *6. The test analyzes whether individuals are "actually dependent upon the business to which they render service." Int'l Detective, 819 F.Supp.2d at 749 (internal quotation marks and citation omitted). The relevant factors are: (1) the nature and degree of the alleged employer's control of the manner in which the work is to be performed; (2) the alleged employee's opportunity for profit or loss depending upon his or her managerial skill; (3) the alleged employee's own investment in equipment or materials required for the work or his or her employment of workers; (4) whether the service rendered requires a special skill; (5) the degree of permanency and duration of the working relationship; and (6) the extent to which the services rendered are an "integral part" of the alleged employer's business. Skokie Maid, 2013 WL 3506149, at *6–7 (quoting Lauritzen, 835 F.2d at 1534–35). No single factor is dispositive. Id. at *6; Perez v. Super Maid, LLC, 55 F. Supp. 3d 1065, 1076 (N.D. Ill. 2014).

Addressing the control and supervision factor, the record shows that Defendants did manage Plaintiff's work through a series of requests. See, e.g., Pl. LR 56.1, Ex. 2, Pl. Dep. Tr. ("Pl. Tr.") 58:12-18 (asking to meet about registration projections); 83:3-9 (asking to organize tryouts); 100:16-25 (asking to reserve soccer fields); 147:5-20 (asking to supervise coaches); 148:1-11 (asking to supervise Coach Rene). However, it is unclear whether Plaintiff was required to comply or if she willingly volunteered; therefore, this factor is unsettled.

Generally, with regard to an individual's opportunity for profit or loss depending upon her managerial skill, courts classify individuals as independent contractors, as opposed to employees, when the individuals receive payment through commissions. See Strom v. Strom Closures, Inc., No. 06 C 7051, 2008 WL 4852998, at *5 (N.D. Ill. Nov. 7, 2008) (holding that this factor tilted

toward independent contractor status when the worker was paid commissions, giving the worker the potential to earn more than a weekly salary). But, again, the record is unclear as to whether Plaintiff maintained "managerial discretion" to adjust her hours spent recruiting players or when she was completing many of the aforementioned tasks. See Perez, 55 F. Supp. 3d at 1077.

Plaintiff used her personal computer and phone to do several tasks for the academy. Pl. Tr. 180:7-20. She also worked out of her home at times. Pl. Dep. 81:21-24; 82:1-5. Plaintiff used her own money to pay for smaller expenses such as copies of fliers made at FedEx. Pl. Dep. 82:1-24. However, the parties have not indicated either way if Plaintiff's use of her personal items and funds should be considered "large expenditures," which would favor a status other than employee. See Perez, 55. F. Supp. 3d at 1077.

The facts presented by the parties for the remaining factors have either been cursorily established, disputed, or contradicted—sometimes by the same party. See, e.g., Pl. Opp'n Def.'s Mot. Summ. J. 17; Pl. LR 56.1 ¶ 85 (worked for Defendants for over five years); Pl. Reply Def.'s Opp'n Mot. Summ. J. 12 (worked for Defendants for three years); Def.'s Reply Mot. Summ. J. 2 (highlighting Plaintiff's inconsistencies in years worked); Def.'s LR 56.1 Resp. Pl. Additional Facts ¶¶ 85-86 (denying Plaintiff worked for five years and was an integral part of Defendants operation); Pl. LR 56.1 ¶¶ 30, 61, 86 (identifying deposition testimony from individuals claiming Plaintiff had an integral role); Def.'s Resp. LR 56.1 ¶ 16 (denying Plaintiff had an integral role).

In short, as the current record stands, the Court is unable to conclude as a matter of law which position, if any, Plaintiff held with Defendants. Defendants have failed to establish that Plaintiff was not employed, in an exempt position, or otherwise disqualified from the protections offered by the FLSA. Therefore, Defendants' motion for summary judgment on Plaintiff's claims under the FLSA and IMWL is denied.

## 2. Illinois Wage Payment and Collection Act

Defendants seek summary judgment on Plaintiff's IWPCA claim. Under the IWPCA, a Plaintiff can recover all unpaid wages plus monthly accruing statutory damages. See 820 ILCS 115/14. The statute, however, does not create a standalone cause of action; rather, it permits employees to collect compensation owed "pursuant to an employment contract or agreement." 820 ILCS 115/3. Thus, there must be a separate contract or agreement that forms the basis of an IWPCA unpaid wages claim. See Nat'l Metalcrafters v. McNeil, 784 F.2d 817, 824 (7th Cir. 1986) ("The only thing the state law at issue in this case requires is that the employer honor his contract."). "Illinois courts have interpreted the term 'agreement' to be broader than a contract and to require only a manifestation of mutual assent." Enger v. Chi. Carriage Cab Co., 77 F.Supp.3d 712, 716 (N.D. Ill. 2014) (citations omitted).

"To state a claim under the [IWPCA], a plaintiff must plead that (1) he had an employment agreement with the employer that required the payment of wages or final compensation and (2) that the defendants were employers under the [IWPCA]." Watts v. ADDO Mgmt., L.L.C., 2018 IL App (1st) 170201, ¶ 14, 97 N.E.3d 75, 80 (citations omitted). As addressed above, it is unclear from the record whether an employment agreement existed between the parties. For that reason, the Court denies summary judgment on this claim because there is a genuine issue of material fact regarding whether an employment agreement existed between the parties.

## 3. Unjust Enrichment

The Court denies Defendants' motion for summary judgment on Plaintiff's unjust enrichment claim. An "unjust enrichment claim . . . will stand or fall with the related claim[s]." Cleary v. Philip Morris Inc., 656 F.3d 511, 517 (7th Cir. 2011). Defendants' sole argument is: "Because [Plaintiff's] employment claims fail, so must her unjust enrichment claim." Defs.' Mot.

Summ. J. 15. As explained above, Plaintiff's employment claims survive Defendants' motion for summary judgment. Accordingly, this issue, along with all of Plaintiff's claims, will be resolved at trial.

### C. Plaintiff's Motion for Summary Judgment

Plaintiff seeks summary judgement on Defendants' affirmative defenses of exemption, ownership, lack of commerce, *res judicata*, statute of limitations, waiver, and equitable estoppel.

Addressing the affirmative defense of exemption, Defendants argue Plaintiff failed to provide any undisputed facts in support, and Plaintiff was exempt because she was a volunteer, part owner of the Academy, or an independent contractor. Def.'s Opp'n Mot. Summ. J. 5. Plaintiff asserts "it is undisputed that Plaintiff did not receive minimum payments under [the] FLSA and IMWL," citing to 29 C.F.R. 641.600(a). Pl. Mot. Summ. J. 2. Therefore, Plaintiff's argument follows, because Defendants allegedly failed to pay the minimum salary of $455 per week, pursuant to the federal regulation, Defendants cannot "prove" Plaintiff was exempt under the FLSA.

Neither the record nor the pleadings establish Plaintiff was ever an employee of Defendants, the pivotal question in this lawsuit. Plaintiff's argument that she was not paid $455 a week requires the Court to accept, at a minimum, the assumption that Plaintiff was an employee. It is insufficient to rely on the absence of an employment benefit—that is, receiving a minimum wage to establish Plaintiff was employed, and therefore not exempt. As it stands now, Plaintiff's argument fails as a matter of law because it assumes Plaintiff was an employee and uses controverted evidence for support.

Plaintiff seeks summary judgment on the affirmative defense of ownership. Defendants argue they have established that there remains a dispute over the material facts regarding this issue.

Specifically, Defendants cite Plaintiff's own statements, "But I was also owner – but I also thought I was owner of the club too," and "The way I understood it was that [we] were 50/50 partners," to bolster their position. Def.'s Opp'n Mot. Summ. J. 6. The Court finds these statements create a genuine issue of material fact preventing summary judgment. Accordingly, the Court denies Plaintiff's motion regarding this affirmative defense.

Plaintiff seeks summary judgment on the affirmative defense of interstate commerce. Defendants' affirmative defense regarding interstate commerce states: "Defendants state they were not engaged in interstate commerce as defined in the FLSA and therefore the FLSA does not apply." Answer ¶ 18. The issue of interstate commerce is a necessary element of Plaintiff's FLSA claims, the merits of which are disputed and have already been put at issue through Defendants' denials of Plaintiff's allegations. Therefore, this is not a proper affirmative defense under the Federal Rules. See Champion Labs., Inc. v. Cent. Illinois Mfg. Co., 157 F. Supp. 3d 759, 768 (N.D. Ill. 2016) (stating that affirmative defenses that dispute the merits at issue are improper under Fed. R. Civ. P. 8(c)) (citations omitted). Accordingly, the Court strikes Defendants' affirmative defense of interstate commerce.

Plaintiff seeks summary judgment on the affirmative defense of *res judicata*. Def.'s Mot. Summ. J. 17. Plaintiff filed a complaint with the Illinois Department of Labor alleging similar claims here. An evidentiary hearing was held. Def. LR 56, Ex. 4. Defendants argue that Plaintiff's claims in this dispute are precluded under the doctrine of *res judicata* because they were adjudicated in the by the IDL. This argument carries little water. Illinois Department of Labor proceedings under the Illinois Wage Payment and Collection Act are not judicial in nature and have no *res judicata* effect. Amoroso v. Crescent Private Capital, L.P., No. 02 C 1453, 2002 WL 1838161, at *1 (N.D. Ill. Aug. 12, 2002) (citing Rekhi v. Wildwood Enterprises, Inc., 579 N.E.2d

1189, 1192 (Ill. App. Ct. 1991). Accordingly, the Court grants summary judgment in favor of Plaintiff regarding Defendants' affirmative defense of *res judicata*.

Plaintiff seeks summary judgment on the affirmative defense of statute of limitations. Defendants do not argue that the relevant statutes of limitations preclude Plaintiff's claims under the FLSA and IMWL. Rather, Defendants assert that Plaintiff's damages under the respective statutes should be limited to November 28, 2014, for recovery under the FLSA, and November 28, 2013 for recovery under the IMWL. Plaintiff states that she, along with her counsel at the time, requested clarification on her relationship with the Academy, and that no clarification was provided by Defendants regarding her status with the Academy. Moreover, Plaintiff claims that she was misled by Defendants about their ability to pay her, and that she would be paid more if she could defer taking payment. The Court finds there is a genuine issue of material fact pertaining to when Plaintiff's alleged harm occurred, and whether Defendants deterred Plaintiff from seeking recourse. Accordingly, the Court denies Plaintiff's motion for summary judgment on Defendants' affirmative defense of statute of limitations.

Plaintiff seeks summary judgment on the affirmative defense of waiver. Defendants argue that Plaintiff waived her unjust enrichment claim, but do not argue she waived the remaining claims or relief sought. Def.'s Opp'n Mot. Summ. J. 14. Defendants rely on Hill v. Cowan, 781 N.E.2d 1065 (Ill. 2002) (a criminal case involving the waiver constitutional rights in light of a guilty plea) and Vaughn v. Speaker, 533 N.E.2d 885 (Ill. 1988) (distinguishing waiver and equitable estoppel) to support their argument that once Plaintiff refused her recruitment commission she was no longer entitled to compensation. Id. Plaintiff argues that the affirmative defense should not apply to the FLSA and the IMWA claims. The Court agrees, Plaintiff's rights under the respective federal and state statutes cannot be waived. See Barrentine v. Arkansas-Best

Freight Sys., Inc., 450 U.S. 728, 740, (1981); Lewis v. Giordano's Enterprises, Inc., 397 Ill. App. 3d 581, 582, 921 N.E.2d 740, 741 (2009). Accordingly, the Court grants summary judgment in Plaintiff's favor regarding waiver of the FLSA and IMWL claims.

Plaintiff seeks summary judgment on the affirmative defense of equitable estoppel. Defendants cite to a Middle District of Florida district court case, McGlothan v. Walmart Stores, Inc., 2006 WL 1679592, at *2 (M.D. Fla. 2006), to support the argument that equitable estoppel can be a recognized affirmative defense against an FLSA claim. The court in McGlothan, which dealt with a Rule 12(f) motion to strike, held that in circumstance when an "employee affirmatively misleads the employer regarding the number of hours worked and the employer had no knowledge of the employee's actual hours," a valid affirmative defense of estoppel to an FLSA claim can be pleaded. Id. Here, Defendants claim Plaintiff remained silent. Def.'s Opp'n Mot. Summ. J. 15. But, Defendants do not argue, nor have they pleaded that Plaintiff affirmatively misled them; therefore, the exception to the general rule does not apply and Defendants' affirmative defense fails. See North v. Bd. of Trustees of IL State Univ., 676 F. Supp. 2d 690, 696 (C.D. Ill. 2009) ("[T]he party requesting the estoppel must show that the defendants have engaged in 'affirmative conduct. . .that was designed to mislead or was unmistakably likely to mislead' a plaintiff into failing to sue in time."). Accordingly, the Court grants Plaintiff's motion to strike Defendants' affirmative defense of equitable estoppel.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is granted in part and denied in part, and Defendants' motion for summary judgment is denied.

IT IS SO ORDERED.

ENTER:

_____
CHARLES RONALD NORGLE, Judge
United States District Court

DATE: February 26, 2019